JOHN HICKMAN,

vs.

RICHARD HICKMAN.

*Sussex, March T.* 1821.

A bill to perpetuate testimony need not be verified by the complainant's affidavit, nor is it essential, in order to support such a bill, that the witnesses to be examined shall be aged, infirm, non residents of the State or likely to remove therefrom. Distinction, in these respects, between bills to perpetuate testimony and bills for the examination of witnesses *de bene esse.*

Distinction at large between bills to perpetuate testimony and bills for the examination of witnesses *de bene esse,* and the practice under the two proceedings respectively.

If the bill has not made a sufficient case to entitle the complainant to an examination of witnesses. whether it be to perpetuate the testimony or to take the testimony *de bene esse,* the defendant should demur. It is too late, after the commission has been ordered, to object that the complainant has failed in any matter necessary to give him the benefit of this course of proceeding.

In the examination of witnesses under a bill to perpetuate testimony, the complainant is confined to the matters for proof alleged in his bill, and to the interrogatories annexed to the bill as the interrogatories to be propounded to the witnesses; but the objection to an examination beyond this limit is waived by the defendant's joining in the commission and filing cross interrogatories.

Depositions taken *in perpetuam memoriam rei* are not to be published except by special order of the Court.

The defendant is generally entitled to costs under a bill to perpetuate testimony.

BILL TO PERPETUATE TESTIMONY.—This bill alleged that the defendant had conveyed to the complainant, by deed of bargain and sale, dated the 7th day of April, A. D., 1812, a tract of land in Sussex County; that the deed was signed, sealed and delivered in the presence of two attest-

ing witnesses; that the complainant had gone into possession and had made improvements; that, nevertheless, the defendant had refused to acknowledge the deed, claiming that the complainant took no title under the deed, and threatening that he would avoid it, at least after the witnesses should be dead. The bill further alleged that the witnesses were aged and infirm, and that should they die before proving the execution of the deed it might be avoided, and the complainant's title defeated. And forasmuch as the complainant being in possession could not by an ejectment, or other suit at law, establish his title to the premises, and could not without the aid of this Court examine the attesting witnesses for the preservation of their testimony, the bill prayed that the complainant might be at liberty to examine the said witnesses to the proof of the deed for perpetuating such proof, upon the interrogatories to the bill annexed; also that the defendant might answer, &c. Two interrogatories were annexed to the bill; the first, touching the witnesses' knowledge of the parties; the second, as to the execution of the deed. No affidavit of the complainant was annexed to the bill.

The answer of the defendant admitted the execution of the deed, but alleged that it was a deed executed as a gift of the land to the complainant, (who was the defendant's son,) in consideration of love and affection only; and that it was intended and understood by the defendant to pass only an estate for the life of the complainant, and not the fee simple: that the complainant had fraudently procured the deed to be so drawn as to convey the fee-simple, and the defendant confiding in his son's integrity, had executed it without causing it to be read to him, being himself unable to read writing. The answer further alleged, that the attesting witnesses were not aged nor infirm; and it insisted that the relation in which the complainant stood to the defendant in regard to the manner in which he had obtained the land or the consideration for the same did

not justify him in calling the defendant into this Court, upon the case stated in the bill and for the object prayed for.

To this answer there was a replication; and a rule was entered in the usual form to take the depositions upon interrogatories filed The complainant filed his interrogatories on the 11th of January, 1821. These interrogatories went into a full inquiry, concerning the execution of the deed; as to who drew the deed; whether the defendant knew its nature and contents; whether it was read to the defendant; the objections, if any, which the defendant made to it; what conversation passed at the time of the execution; and whether, at another time, the defendant had not talked of conveying this land to the complainant. Also, inquiries were made as to the improvements on the land at the time the complainant took possession of it, the quantity of land in cultivation, and the buildings erected by the complainant. The defendant filed cross interrogatories on the 24th of January, 1821. They related to the writing of the deed; whether it was read to the defendant or explained to him; and whether, in a conversation prior to the execution of the deed, the defendant did not declare that he intended to convey a life estate only. The cross interrogatories, also inquired as to the improvements put upon the land, the size of the house, &c.

The depositions of the two attesting witnesses to the deed, Major Benson and Eben Benson, were taken; also of Burton Waples, Armer M. Long, Isaiah Long and Noah Lockwood, all being witnesses for the complainant. No witnesses were examined for the defendant.

Before the return day of the commission, which was at the March Term, 1821, the defendant filed exceptions to the commission,—also to the interrogatories and depositions of the witnesses taken in the cause. The exceptions were these : 1. That the order for the commission was made without any affidavit of the complainant to his bill, or

proof that the witnesses to be examined were aged or infirm, or resided out of the State, or were about to remove from it ; or that their testimony was material. 2. That the testimony of the attesting witnesses was taken upon other interrogatories than those annexed to the bill, and not upon the interrogatories annexed to the bill, according to the prayer thereof. 3. That witnesses had been examined upon matters other than the execution of the deed, and which were not prayed for in the bill. 4. That it did not appear that said witnesses, or any of them, were 70 years of age or upwards, or were infirm, or that they resided out of the State, or were about to remove from the same.

The depositions were returned at the March Term, 1820, and published as in ordinary cases, and the cause was set down on the list, usually made by the Register in Chancery, of causes at issue and upon demurrer, for hearing.

*Wells,* for the complainant.

*Robinson,* for the defendant.

RIDGELY, CHANCELLOR.—There are two kinds of bills to preserve testimony ; one, is to perpetuate the testimony, or to examine witnesses *in perpetuam rei memoriam* ; the other, is to examine witnesses *de bene esse.* The former lies where the party is in actual, undisturbed possession ; or where lands are devised by will from the heir at law ; or where no action has been brought, but the party intends to commence a suit. In these, and in similar cases, this bill will lie, because no suit being brought, the party has no opportunity to examine his witnesses, and is exposed to a future attack or to a future loss, in case such testimony cannot be preserved until a judicial investigation.

The bill to examine witnesses *de bene esse* is different

from the bill to perpetuate testimony, and is directly the reverse of it.   It is brought by a person out of possession, whose witnesses are aged or infirm, or where the knowledge of the matter rests with a single witness, or with two only, and is in aid of a trial at law or in equity, where the testimony is in danger of being lost before the matter to which it relates can be examined into by the proper tribunal. It is commonly brought after the commencement of a suit at law or in equity ; or it is made part of a bill in equity brought in a case in which such testimony has a direct bearing and reference.

If a party could not perpetuate his testimony by a bill in this court before suit brought, he might lose the opportunity of establishing his right; for his adversary need only delay a suit until his witnesses are dead, or the testimony be otherwise lost, and then the party would be without remedy or protection, however legal and honest his defence might be.

The books of practice are extremely confused on this subject, and generally blend the two kinds of bills together, and do not plainly distinguish the rules applicable to one from those applicable to the other.   And, indeed, in the adjudged cases, the language of the reporters seldom makes any distinction, though by attention to the cases, the difference may be plainly observed.   *Cooper's Treatise on Equity* throws more light upon this subject, and arranges and methodises it more clearly than any other practical work that I have seen.   See *Gilbert's Equity* 119, 120 ; 6 *Vesey Jr.* 251.

Bills to perpetuate testimony are substantial, original bills, which have no other design but to secure the evidence of some right or interest which may be endangered or lost, if the testimony upon which it depends be not preserved.   Upon the same principle the Court will lend its aid in bills *quia timet*, to secure a party against the neglect, inadvertence, or culpability of another.   And so,

in bills of discovery, for discovering facts resting in the knowledge of the defendant, or deeds or other writings or things in his power or custody,—in these instances the Court acts to secure a right, or to prevent a loss or injury, and not to redress a wrong.

In bills to perpetuate testimony, no relief is prayed. 3 *Atk.* 439, 2 *Vent.* 114, *Prec. in Ch.* 532 : and so, in bills of discovery, 3 *Vesey Jr.* 4, 343 : 2 *Ves. Jr.* 459 : 2 *Bro. Ch. Rep.* 319 : 4 *Bro. Ch. Rep.* 480. This is because the object of such bills is attained as soon as the testimony is taken, or the discovery made.

We find many instances of bills to perpetuate testimony or to examine witnesses *in perpetuam rei memoriam.* In *Dorset vs. Girdler, Prec. in Chanc.* 531, there was a bill brought by one *in possession* of a fishery, to examine his witnesses *in perpetuam rei memoriam,* to establish his sole right of fishery. It was suggested in the bill, that the defendant pretended a sole right, and threatened to bring an action and to disturb the plaintiff when his witnesses should be dead. The defendant demurred, for that the plaintiff had not verified his title at law, and had no right to bring his bill in the first instance. The demurrer was over-ruled, because *one in possession and not disturbed* cannot sue, and the facts to which the testimony relates cannot be immediately investigated in a court of law. If the defendant had *actually disturbed* the plaintiff, the defendant ought to have pleaded this, and that the plaintiff should seek his remedy at law ; or, if the plaintiff had shown in his bill that the defendant had actually disturbed him by fishing, then the demurrer would have been proper, but not for barely threatening. There, the defendant had by his answer insisted on his right of fishery and hoped to prove it, and yet by his demurrer would debar the plaintiff from proving anything at all. See 1 *Atk.* 284.

Here, the defendant, Hickman, admits by his answer, that the complainant is in possession, but he denies that

he ever intended to convey to the complainant an estate in fee simple, and says that he cannot read writing, that the deed was not read to him, and that if he ever executed such a deed as the complainant hath set out in his bill, it was by imposition. This answer admits everything necessary to give this Court jurisdiction ; and the bill makes out precisely a case fitted for the examination of witnesses to perpetuate their testimony.

Lord Nottingham, it is said by *Cooper* in his *Treatise on Equity, p.* 51, decided the first and leading case upon this sort of bill ; and he held that it might be exhibited for leave to bring a deed into Court, and to perpetuate the testimony of witnesses to it ; and that the plaintiff should set forth a title and pray to examine to it. The case is cited, *Rep. Temp. Finch* 391.

In *Parry vs. Rogers* 1 *Vern.* 441, a demurrer to a bill to perpetuate testimony touching the title of lands was allowed, because there was no impediment that hindered the plaintiff from trying his right at law. See 1 *Vern.* 308: 1 *Atk.* 571.

*Suffolk vs. Green, et. al.,* 1 *Atk.* 450, was a bill to perpetuate the testimony of witnesses to a bond charged to be usurious, alleging that the defendant, Green, whom the plaintiff wanted to examine, was very aged and infirm. Green, who was a nominee only in the bond, demurred, as the bill sought to subject him to a penalty, and also as the plaintiff did not offer to pay what was really due. If the demurrer had stopped at the first part of the bill, which sought to subject the defendant to a penalty, it would have been good ; but, as to perpetuating the testimony, it was bad ; for the plaintiff was entitled to perpetuate the testimony, notwithstanding his not offering to pay. And Lord Hardwicke says, a man may bring a bill to perpetuate his testimony in many cases where he cannot bring a bill for relief without waiving the penalty, as in waste—or in the case of a forged deed—or in the case

of insurances, after a commission to examine witnesses beyond sea as to fraudulent losses ; and yet, in many cases fraudulent losses are subject to a penalty, even sometimes felonious. The bill is to perpetuate testimony to a plain fact. What may be the consequence of that fact is of another consideration. This case of *Suffolk vs. Green* is full and clear ; for it appears that though the party may be subjected to a penalty, or even to felony, the testimony may be perpetuated.

I may refer to the practice of perpetuating the testimony of witnesses to wills. Wills of land are not proved in England as they are with us. There, they may be proved in chancery, and at law. When lands are devised from the heir, the devisee in order to perpetuate the testimony of the witnesses, exhibits a bill in chancery against the heir, and sets forth the will *verbatim*, therein suggesting that the heir is inclined to dispute its validity; and then, the defendant having answered, they proceed to issue as in other cases and examine the witnesses to the will, after which the cause is at an end without proceeding to any decree, no relief being prayed by the bill. This is what is usually meant by proving a will in chancery. 2 *Harrison's Ch. Pr.* 130 : 2 *P. Wms.* 285. The form of such bill and answer may be seen in 2 *Harrison's Ch. Pr.* 210 to 213, and of the interrogatories, 2 *ib.* 419.

In none of these cases is any affidavit necessary. The ground or reason for perpetuating the testimony is set forth in the bill. If they are not sufficient the defendant may demur. If he should deem this course not proper, then he must answer, and if the facts stated in the bill are not denied the commission necessarily follows.

The plaintiff must show his title or interest in the matter or thing to which the evidence relates. 1 *Harrison's Ch. Pr.* 110 : *Cooper's Eq.* 52 : 1 *Vern.* 105 : 1 *Eq. Ca. Ab.* 233–4: 3 *Bro. Ch. Rep.* 481. The bill ought sufficiently to describe the right claimed. If it is so general that the

Opinion : —bills to examine witnesses *de bene esse.*

defendant cannot know the point upon which the examination is to be made, the bill will not be allowed.  1 *Ves. Jr.* 449 : 1 *Vern.* 312 : 3 *Bro. Ch. Rep.* 481

After the witnesses are examined, the plaintiff must not set his cause down to be heard ; for the end is answered by the examination.  If he does, the bill will be dismissed with costs, but so as not to prejudice him in perpetuating the testimony. 2 *P. Wms.* 162 : *Ambler* 237 : 1 *Harrison's Ch. Pr.* 115.

The bill to examine witnesses *de bene esse,* is generally brought by a person out of possession, and is brought by a person having a suit at law or in equity, whose witnesses are aged, infirm, sick, absent, or going beyond sea : and there must always be an affidavit annexed to it, showing the circumstances by which the evidence intended to be perpetuated is in danger of being lost.  *Cooper's Eq.* 57 : 1 *Eq. Ca. Ab.* 233.

In *Philips vs. Carew,* 1 *P. Wms.* 117, the bill was to discover a title to land, for an account of profits, and to perpetuate testimony.   There was an answer as to title, and also a demurrer as to perpetuating evidence, on the ground that the plaintiff might bring his ejectment, and examine his witnesses at the trial.   Upon an affidavit that the plaintiff's witnesses were infirm and unable to travel, the demurrer was over-ruled.   Without such affidavit the demurrer would have been allowed.   In that case the plaintiff was *out of possession,* but his bill was for a discovery and for an account of profits; and the examination must have been *de bene esse,* from the nature of the case; for it was auxiliary to the remedy.   As a suit was depending, and the examination of the witnesses was asked for out of the ordinary course of proceeding, the affidavit of the party was required to entitle him to this unusual means of obtaining his evidence.   It is like a bill brought to be satisfied of a debt upon a bond lost.   The plaintiff must make affidavit of the loss, for if the bond were not lost, a

court of law, and not a court of equity, would have jurisdiction. 2 *Eq. Ca. Ab.* 13. *c.* 1

In *Shirley vs. Ferrers*, 3 *P. Wms.* 77 : the matter to be examined into lay only in the knowledge of *one* witness and was of great importance. On affidavit that there was no other person privy to the transaction, the examination was ordered, though there was no affidavit of age, infirmity, or danger of dying. Here, there was an original bill to avoid a forged deed, and before an answer a supplemental bill was filed to examine this witness *de bene esse.*

In *Hankin vs. Middleditch*, 2 *Bro. Ch. Rep.* 641, on affidavit that a witness was the *only* witness to a fact material to the cause, though no age was sworn to, he was examined *de bene esse.* In *Cholmondsly vs. Oxford*, 4 *Bro. Ch. Rep.* 157, *two* persons were examined *de bene esse*, being the only persons who had knowledge of the' material facts, without a statement of their age. The affidavit is not mentioned but it certainly must have been made.

It is a rule in England, when the examination *de bene esse*, is taken on account of age, that the affidavit shall state the witness to be seventy years old ; but that was dispensed with in a case where the witness was sixty years old and upwards, and greatly afflicted with the gravel. *Ambler* 65. Considering the life of man in this State, a shorter period probably ought to be adopted. Sixty years here are probably not more than seventy in England.

Many of these examinations are made on motion or petition,—2 *Harrison's Ch. Pr.* 89, 44, and always with an affidavit.

It is evident, in this case of *Hickman vs. Hickman*, that it is not an objection to these depositions, that there is no affidavit, and that the witnesses are not seventy years of age ; because this is not an examination *de bene esse.* It is an examination obtained by the party in possession, who cannot sue, and who has no other means to preserve

the testimony to the deed on which he relies as evidence of his title. No relief is prayed ; and in the answer it is admitted that the complainant is in possession, and nothing is put in issue but the fairness of the execution of the deed, which is the subject matter sought by the bill to be inquired into.

When a defendant supposes that a complainant has not made out a case in his bill to entitle him to an examination of witnesses to perpetuate their testimony, or *de bene esse*, he ought to demur. It is too late, after the commis sion is ordered, to object that the party has failed in some matter necessary to give him the benefit of this course of proceeding. This might be an answer to the want of an affidavit, if such affidavit were requisite in this case.

There are two other objections to these depositions : 1, That the witnesses have been examined upon interrogatories other than those annexed to the bill, and not upon those so annexed ; and 2. That they have been examined upon matters not prayed for, and upon matters other than the execution of the deed.

All these exceptions are to be considered as on a motion to suppress the depositions. The question now is, whether for the two last reasons these depositions ought to be suppressed.

The rule is this. If the defendant had merely answered and had not joined in the commission to examine the witnesses, the plaintiff would have been confined to the interrogatories annexed to the bill. In that case, the commission or rule to examine witnesses would have been for the benefit of the plaintiff only, and he could not have gone beyond the interrogatories annexed to the bill. But when the defendant joined in the commission or rule, and thereby had the liberty to examine as largely as he pleased, according to the rules of practice the plaintiff had a right to exhibit such interrogatories as he pleased, and to extend

his examination to any matters suitable to his case. 1 *Harrison's Ch. Pr.* 114, 115.

I have before noticed that causes of this kind should not be set down for hearing. Under the English practice, if the plaintiff does set his cause down for hearing the bill will be dismissed with costs, because the end is answered by the examination. The setting down a cause for hearing follows the publication of the depositions. The publication of depositions and setting down causes for hearing in England are much more important matters than with us, and are not matters of course. They are done by consent, by rules and orders, and with notice by process. Here, they are matters of course, and are done by the Register under the orders, rules, or practice of the Court. The reason why the bill is dismissed, if it is set down for hearing, is, because it is unnecessary, is productive of expense to the other side, and is contrary to the rule of this court, which does not permit the publication of evidence taken in this way, because these witnesses may hereafter be examined in chief, and it is contrary to the practice, which there, in all things almost, is much according to the notion of the civil law that no act of the Court may be done, *altera parte inaudita. Gilbert's Chan.* 151. So that a decree cannot be made without a subpœna to hear judgment. 1 *Harrison's Ch. Pr.* 362..

These reasons, however, do not apply here; because we have no practice in such cases, this being the first bill of the sort in this State, and particularly, as the plaintiff would, at law, have the benefit of these depositions.·

Depositions like these, upon an original bill brought by one in possession, or on similar principles, taken *in perpetuam rei memoriam,* are not to be published until after the death of the witnesses, without a special order of the Court, because they cannot be used so long as the witnesses are living and may be had, to be examined by a jury. *Prec. in Ch.* 531–2 ; *Prax in curia cancellari,* 26.

And so, the depositions taken *de bene esse* are not to be published unless the witnesses die or are absent, so that it is impossible to have an examination of them in chief; and then, not without the special order of the Court. 1 *Harrison's Ch. Pr.* 110, 111: 2 *Vesey Sr.* 336–7: 1 *P. Wms.* 567.

There certainly has been an irregularity in publishing these depositions; but as this happened inadvertently, and according to the general rules of the Court (though this kind of case is an exception to those rules,) it will not be a sufficient reason for their suppression. It was not the act of either party, except that they or their counsel did not apply to the Court to take this case out of the general operation of the rule; and, inasmuch as the case is new and the publication passed by mistake and without being brought into the view of the Court, we will now, to save expense, and as no injury can arise to either party, and especially to the defendant, do what should have been done at first. The interrogatories and depositions must be sealed up, under an order to be made for that purpose, the order further directing that they shall not be again published without the special order of the Court; and if any of the counsel or parties have copies or notes of the depositions, they should be brought into court and here delivered up.

In future, it will be considered as the settled practice of this Court, if any depositions shall be taken upon any bill filed to perpetuate testimony, or upon a bill, motion or petition to examine witnesses *de bene esse,* that if they be published without the special order of this court they shall be suppressed.

As to costs,—the defendant must be paid his costs. It is laid down in *Bidulph vs. Bidulph* 2 *P. Wms.* 285, that on a bill by a devisee to perpetuate the testimony of witnesses to a will, the heir must be paid his costs, notwithstanding he cross-examines the plaintiff's witnesses, and although he refused, after the will was proved, to release

his right to the premises; for the plaintiff had the fruit of his suit and the benefit of perpetuating the testimony of his witnesses. And Lord Hardwicke said, in *Clifton vs. Orchard* 1 *Atk.* 610, that costs are never given against the defendant on a bill brought to perpetuate testimony. This is when he cross-examines only; but where he encounters the will by examining witnesses, he shall not have his costs. 3 *Atk.* 387: see also 8 *Vesey Jr.* 69 : 9 *Vesey Jr.* 103 : 1 *Mad. Ch. Pr.* 195.